**STATE of Minnesota, Respondent,**

v.

**Jeffrey Alan CORNELL, Appellant.**

**No. C7–92–941.**

Court of Appeals of Minnesota.

Oct. 27, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Foley, Ramsey County Atty., Darrell C. Hill, Asst. County Atty., St. Paul, for respondent.

James T. Hankes, Ramsey County Public Defender, Joseph T. Carter, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Jeffrey Cornell asserts error in the trial court's refusal to suppress marijuana found in a search of his person after a traffic stop. Cornell argues that the officer's seizure of a soft baggie of marijuana was invalid because a protective pat-down permits seizure only of weapons or of hard objects that could be weapons. The state argues that the seizure was valid because the officer developed probable cause to arrest Cornell during his questioning of Cornell, who had been speeding and who admitted to having smoked marijuana one half hour earlier. We affirm.

## FACTS

In November 1991, at 1:20 a.m., St. Paul Police Officer Kevin Lee Sass saw a vehicle, traveling an estimated 90–95 miles per hour in a zone posted for 55 m.p.h., drift across lanes without signaling. He stopped the vehicle and approached it. Cornell was driving and his girlfriend was in the passenger seat. Sass testified that Cornell's eyes were red and glossy.

Cornell did not have his driver's license with him, and Sass told him to come to the squad car. Before placing him in the squad car, Sass patted Cornell down for weapons; he felt a soft bulge below Cornell's belt line but did nothing with regard to the bulge.

After placing him in the squad car, Sass radioed for information about Cornell's license and determined that he had a valid license. Sass then observed Cornell pushing the bulging object further down into the crotch of his pants. Cornell told Sass he had not been drinking, that he had smoked marijuana about a half hour before driving, but denied having any marijuana on his person. Sass testified he thought Cornell's driving was impaired but did not think it was prudent to arrest him for driving under the influence. In his written report Sass stated, "I did not feel his driving was impaired by drugs."

After writing a speeding ticket and deciding to release Cornell, Sass again asked him about marijuana. Cornell again denied possessing marijuana. Sass told him to get out of the squad car and empty the contents of his pockets onto the hood of the car. The officer testified he had made the decision to conduct a second search while they were in the squad car. Among the contents of his pockets were cash and rolling papers. Sass then asked Cornell to turn over the object he was hiding in his pants, which he believed was drugs or contraband. Cornell told him the object was his penis. Sass did not believe this explanation and insisted he remove the object. Cornell then removed a bag of marijuana from his pants. A further search revealed a pager, cash, and more marijuana. Sass then arrested him. Sass testified that he decided to arrest him upon finding the first baggie of marijuana.

At the omnibus hearing, the trial court refused to suppress the evidence. The trial judge noted that "this is one of the situations where the officer's suspicions grew in the process of the routine work that a police officer does." The court found probable cause to support the search for contra-

band based on Cornell's glossy eyes, the erratic driving, speeding, his furtive movements in pushing the marijuana baggie further down into his pants, his "incredible explanation" for the bulge, and his admission that he had been smoking marijuana earlier that evening. After a court trial, Cornell was convicted of possession of marijuana with intent to sell and of bribery.[1]

## ISSUES

I. Is the retrieval of the baggie of marijuana valid as part of a protective pat-down for weapons?

II. Did the officer conduct a valid search incident to arrest based on the existence of probable cause to arrest at the time of the search for contraband?

## DISCUSSION

### I

Warrantless searches are unreasonable under the fourth amendment, subject to only a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The exceptions include search incident to arrest, *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), and protective pat-search for weapons. *Terry v. Ohio*, 392 U.S. 1, 29–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968).

An officer may conduct a limited search of the outer clothing of a person if it is suspected the person may be armed and dangerous. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. The rationale for this pat-search is to discover weapons which might be used to assault the officer. *Id.* It appears that Sass conducted the initial pat-down search for weapons appropriately and with a minimum of intrusion. However, the second search would not be valid under the *Terry* exception.

The *Terry* exception to the warrant requirement permits officers to search only for weapons. Accordingly, if an officer conducting a pat-down search feels a soft object that cannot possibly be a weapon,

the officer is not privileged to satisfy his curiosity to determine what the object is. *State v. Dickerson*, 481 N.W.2d 840, 844, 846 (Minn.1992). Sass testified the second search was not for weapons but for contraband. It seems clear that the second search would be invalid under a *Terry* analysis.

Nonetheless, the second search could be valid under another exception. Although soft objects may not be seized as part of a *Terry* search, they may be seized in a search incident to arrest.

### II

After an arrest, officers may search the suspect to gather evidence of the crime. *Chimel*, 395 U.S. at 762–63, 89 S.Ct. at 2040. Even if a search is conducted before the actual arrest, it is valid if "(1) the arrest and the search are substantially contemporaneous, and (2) probable cause to arrest existed before the search." *United States v. Ilazi*, 730 F.2d 1120, 1126 (8th Cir.1984). *See also Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *People v. Simon*, 45 Cal.2d 645, 648, 290 P.2d 531, 533 (1955); William F. LaFave, 2 Search and Seizure § 5.4(a,b) (1987).

It is not important that the search precedes an arrest so long as the fruits of the search are not necessary to support probable cause to arrest. *Smith v. Ohio*, 494 U.S. 541, 542–44, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990) (rejecting the argument that a search is constitutional because its fruits justified the arrest); *Rawlings*, 448 U.S. at 111, 100 S.Ct. at 2564 (stating that if formal arrest followed quickly, it is not particularly important that search preceded arrest). In a recent case, the Minnesota Supreme Court noted that the state may justify an officer's search of an automobile prior to an arrest as a search incident to arrest if the officer had objective probable cause to arrest at the time of the search. *State v. White*, 489 N.W.2d 792 (Minn.1992). The crucial factor is that

---

**1.** Cornell offered Officer Sass $700 in cash if he    would let him go.

there must be probable cause to arrest at the time the officer makes the search.

The state argues that the second search was valid because the arrest and search were substantially contemporaneous and because Sass, through his questioning and observation of Cornell, developed probable cause to believe Cornell possessed drugs on his person.

It is apparent that in this case the arrest and search were substantially contemporaneous. At issue is whether Officer Sass had probable cause to arrest Cornell for possession of a controlled substance prior to the search. Probable cause exists if the objective facts indicate that "a person of ordinary care and prudence [would] entertain an honest and strong suspicion that a crime had been committed." *State v. Johnson,* 314 N.W.2d 229, 230 (Minn.1982) (quoting *State v. Carlson,* 267 N.W.2d 170, 173 (Minn.1978)). Because the test for probable cause is an objective one, a search must be upheld "if there was a valid ground for the search, even if the officers conducting the search based the search on the wrong ground or had an improper motive." *State v. Pleas,* 329 N.W.2d 329, 332 (Minn.1983).

The second search is valid as a search incident to arrest under the authority of *State v. Ludtke,* 306 N.W.2d 111, 113 (Minn.1981). In *Ludtke,* the officer had seen a plastic bag of marijuana protruding from the suspect's shirt pocket and had pulled out the baggie. Later, during the pat-down search, the officer felt a soft object in a pants pocket and retrieved the object, which turned out to be a bag of cocaine. The court found this second seizure to be valid because the officer had already found a plastic bag of marijuana on the suspect's person and thus could assume that the soft object he felt during the pat-down also contained drugs. *Id.* The court did not specify which exception to the warrant requirement justified the officer's second seizure of drugs.

In a later case, however, the court stated that "[t]he best explanation for *Ludtke* is that based on all the circumstances, the seizure of the soft bag was justified because it occurred during a search incident to arrest." *Dickerson,* 481 N.W.2d at 846. Even though the retrieval of the cocaine baggie occurred during the *Terry* search, justification for the search was established under the law governing searches incident to arrest, not under the law of *Terry* searches.

Cornell argues that the officer's second search is invalid under *Dickerson.* Our supreme court held in *Dickerson* that seizure of a packet of drugs from the person of a suspect was invalid because the officer was limited under the circumstances to a *Terry* search for weapons. The officer had stopped the defendant because he suspected the defendant possessed drugs. The defendant had come out of a multi-unit building, known to be a "crack house," at about 8:15 p.m., avoided eye contact with the officer, and changed direction upon seeing him. The officer testified that during the protective pat-down search he felt a lump in the front pocket of the defendant's jacket, manipulated it with his fingers, and then determined it was crack cocaine. The trial court upheld the search and seizure under a "plain feel" theory. Under this theory, an officer who feels a soft object which appears to be contraband during a protective pat-down search could seize the object even if it is obviously not a weapon. *Id.* at 844–46.

A divided supreme court, however, rejected the "plain feel" theory. *Id.* at 844–45. The court noted that the purpose of the pat-down is to search only for weapons and that if an object felt during the pat-down is clearly not a weapon, "the officer is not privileged to poke around to determine what that object is." *Id.* at 844. The court also noted that the sense of touch is less reliable than the sense of sight, and thus it would be improper to permit searches based solely on an officer's perception that a soft object felt during a *Terry* pat-down is drugs. *Id.* at 845.

The court distinguished the facts of *Dickerson* from *Ludtke,* noting that in *Ludtke* the officer had already seen a bag of marijuana in Ludtke's pocket before the frisk and that he had observed Ludtke

reaching furtively into the back seat of the car. These circumstances "plus the presence of a plastic bag containing *anything* on Ludtke's body gave police probable cause to believe that Ludtke was in possession of a controlled substance, justifying a full search." *Id.* at 846. In *Dickerson,* on the other hand, the officer had almost no facts other than the soft object on which to base probable cause to arrest the defendant.

Following the reasoning of *Ludtke* and *Dickerson,* we conclude that the trial court's refusal to suppress marijuana found on Cornell's person is not clearly erroneous or contrary to law. We uphold the trial court's decision because Sass conducted a valid search incident to arrest based on probable cause to arrest Cornell for possession of marijuana.

Although in this case the facts supporting probable cause are not as strong as in *Ludtke,* where the officer had already spotted a protruding bag of marijuana before conducting a further search, they are stronger than the facts of *Dickerson.*[2] As the trial court noted, Cornell had admitted smoking marijuana a half hour earlier, his eyes were glossy, there was a bulge in his jeans in an area where people do not normally carry a wallet or food or other lawful items, he had furtively tried to push the bulging object further down in the crotch of his pants, his explanation for the bulge was difficult to believe, and he had been driving erratically—changing lanes without signaling and driving 90 miles per hour on a highway posted for 55 m.p.h.

It seems clear that the officer's perception of the soft object, without other facts, would not have been sufficient to give him probable cause to arrest and search Cornell. *Dickerson* plainly prohibits such searches. However, the soft object, in the light of the other known circumstances, raised a legitimate suspicion in the officer's mind that Cornell possessed drugs. We agree with the trial court that the forego-

ing facts provided the officer with probable cause to arrest and search Cornell.

Cornell argues that even if the facts support a finding of probable cause, the search nevertheless is invalid because the officer's decision to arrest Cornell occurred only after he found the first baggie of marijuana. Cornell argues that the timing of the decision indicates that Sass conducted the "plain feel" type of warrantless search criticized in *Dickerson.* He also argues that the officer is using the fruits of the search to justify the search, a practice prohibited by the courts. *See Ilazi,* 730 F.2d at 1127.

As the Minnesota Supreme Court emphasized in *White,* the test for probable cause is an objective one. In *White,* the officer erroneously believed he was conducting a proper search of an automobile under the *Terry* exception. The supreme court concluded, nonetheless, that the search was lawful because the officer had objective probable cause to arrest at the time of the search and thus was conducting a valid search incident to arrest.

Similarly, it does not matter that Sass subjectively decided to arrest only after retrieving the baggie of marijuana. We look to the facts as a whole to determine whether Sass, regardless of what he subjectively reasoned, had probable cause to arrest at the time of the search. The objective facts show that Sass had probable cause to arrest Cornell before the search for the baggie. Accordingly, the second search was not a "plain feel" search or a *Terry* pat-down but a valid search incident to arrest.

The trial court's decision also receives strong support from *Ilazi,* in which the Eighth Circuit determined that probable cause to arrest the defendant for possession of contraband existed before agents conducted a search of the defendant. *Ilazi,* 730 F.2d at 1127. In *Ilazi,* the defendant and an acquaintance arrived at the airport on a flight from Florida, carried no luggage, staggered from left to right,

---

**2.** We also note the United States Supreme Court has recently granted certiorari to review the *Dickerson* case. ⸺ U.S. ⸺, 113 S.Ct. 53, 121 L.Ed.2d 22. Its precedential value is therefore uncertain.

sniffed and inhaled deeply, and limped as they walked. Although they were aliens, they carried no passports or immigration papers. They denied carrying narcotics. One agent noticed a bulge in Ilazi's right boot. Ilazi denied having anything in his boot but unzipped it to reveal a bulge in his sock. When the agent reached toward this bulge, Ilazi jumped back. The agents then arrested Ilazi and his associate, searched them, and found two bags of cocaine in Ilazi's boots.

The court held "probable cause to arrest Ilazi existed *when he refused to explain the bulge on the inside of his boot.*" *Id.*, 730 F.2d at 1127 (emphasis supplied). Accordingly, the attempt to search Ilazi's boot was a valid search incident to arrest.

Although *Ilazi* is not binding precedent, it is persuasive authority. The facts are quite similar to those of this case.

## DECISION

We hold that the officer had objective probable cause to arrest before the search and that he conducted a valid search incident to arrest. We affirm the trial court's refusal to suppress evidence gathered from the search.

Affirmed.