**STATE of Minnesota, Appellant,**

v.

**Eric Dean HAWKINS, Respondent.**

No. CX–00–1144.

Court of Appeals of Minnesota.

Feb. 7, 2001.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, for appellant.

Dave Knutson, Acting Chief Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for respondent.

Considered and decided by
PETERSON, Presiding Judge,
LANSING, Judge, and STONEBURNER,
Judge.

## OPINION

PETERSON, Judge.

This appeal is from a pretrial order suppressing crack cocaine found during a search of appellant Eric Dean Hawkins after he was arrested for a misdemeanor offense. The state argues that there was probable cause to arrest Hawkins for a felony drug offense and, therefore, the crack cocaine was properly seized during a search incident to arrest. We reverse.

## FACTS

The district court found that at about 1:40 a.m. on May 12, 2000, Minneapolis police officer Daniel Willis and his partner were on patrol near the intersection of Bloomington Avenue South and 27th Ave-

nue South in Minneapolis.[1] The court found that Willis testified that he saw Hawkins riding a bicycle near the intersection and that Hawkins was whistling and waving at approaching vehicles. The court also found that Willis testified that he watched Hawkins for about 15 minutes, and during that time, Willis saw Hawkins conduct several hand-to-hand transactions with other individuals. Once each transaction was completed, Willis testified, the other individuals left quickly.

Willis arrested Hawkins for loitering with intent to commit an illegal act in violation of Minneapolis Ordinance 385.50, which is a misdemeanor offense. The officers searched Hawkins and discovered crack cocaine in his sock.

Hawkins was charged by complaint with one count of fifth-degree controlled substance crime in violation of Minn.Stat. § 152.025, subd. 2(1) (1998). Hawkins filed a motion to suppress the crack cocaine discovered in his sock, arguing that police lacked probable cause to arrest him. At the hearing on the suppression motion, Willis testified that he could not see whether Hawkins had anything in his hand or whether anything was exchanged, and he never saw Hawkins remove anything from his mouth or a pocket. Willis also testified that the hand-to-hand transactions he saw Hawkins participate in took place too quickly to be consistent with an innocent activity and that they were consistent with hand-to-hand transactions in other narcotics cases. Willis explained:

> If someone were * * * making change or something they probably would hold it out to count it out, or if they were buying something [legitimate] they'd make sure that the change they had in their hand was appropriate, or if they were shaking hands they probably would have stood around and talked too a little bit, but it was real brief. They came up, there was a short conversation, a hand

to hand transaction, and then they parted ways.

> * * * *

> In my opinion if you were going to greet somebody you'd have normal conversation with him at a point, or it wouldn't be that brief. This was an act which is in my opinion trying to be not obvious but be sneaky at the same time, where he'd come up, there would be a short conversation about what you are going to do, what deal you are going to make, the slide of hands, hand transaction, and then the parties would part. It's real brief, to the point. There is no standing around talking about old times or anything like that, it's for a purpose and the purpose is to transact narcotics.

Willis testified that he had been involved in about 30 to 35 narcotics cases, about half of which involved hand-to-hand exchanges. He did not recall observing any hand-to-hand exchanges that turned out to be something other than a narcotics transaction. Willis stated that waving down vehicles and whistling at them is a common trait of street-level narcotics dealers, a way of getting people's attention and letting people know that the dealers are selling narcotics.

The district court concluded that the officers lacked probable cause to arrest Hawkins and, therefore, the search incident to arrest was impermissible. The court explained:

> Officer Willis and his partner lacked probable cause to arrest [Hawkins]. The officers only observed [Hawkins] for a short period (15 minutes according to Willis' testimony), and [Hawkins's] conduct could have been perfectly benign. The fact that [Hawkins] was bicycling on or near the corner of Bloomington and 27th Ave and making "hand to hand exchanges," without more, does not necessarily mean that he was engaging in

---

1. Willis testified that he and his partner were on patrol near Bloomington Avenue South and 27th Street. There is no dispute that the intersection Willis referred to is the intersection of Bloomington Avenue South and 27th Street East in Minneapolis.

illegal activity. The facts simply do not reach the level required to constitute probable cause.

The court alternatively concluded that even if the officers had probable cause to arrest Hawkins for a misdemeanor, the search was unconstitutional because Minn. R.Crim.P. 6.01 required the officers to issue a citation instead of arresting Hawkins.

## ISSUE

Did probable cause exist to arrest Hawkins for a felony offense?

## ANALYSIS

■ In a pretrial appeal, this court will reverse the district court's suppression of evidence only if the state demonstrates clearly and unequivocally that (1) the district court erred in its judgment and (2) the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547, 551 (Minn.1987) (stating critical impact is shown where the state's case is destroyed without the suppressed evidence or where the absence of the evidence significantly reduces the likelihood of a successful prosecution). The parties do not dispute that the critical impact requirement is met because suppression of the cocaine will result in dismissal of the charges.

The state argues that although Hawkins was arrested for a misdemeanor—loitering with intent to commit an illegal act—the real issue before us is whether probable cause existed to arrest Hawkins for a felony. Hawkins argues that the prosecution is trying to recast the issue presented to the district court by suggesting that the officers really intended to make a felony arrest on probable cause for controlled-substance violations. Hawkins acknowledges that the prosecution raised the felony-arrest issue before the district court, but he contends that the prosecutor did not brief the issue or examine the state's witness on the theory. Hawkins argues that the case was presented to the district

court as an arrest for a misdemeanor loitering offense and nothing more. We disagree.

It does not appear that any issues were briefed for the district court; there are no briefs in the district court record. Also, the prosecutor's examination of Willis was directed toward establishing what Willis saw before arresting Hawkins, not to establishing why Willis arrested Hawkins for a misdemeanor, rather than a felony. Instead, the prosecutor made the following argument to the court:

> Under these circumstances, considering Officer Willis' training and extensive experience in observations of such drug activity before, he at that point had probable cause to arrest the Defendant for trafficking in narcotics. This is a felony, not a misdemeanor, and whether Officer Willis arrested the Defendant for loitering, which is a misdemeanor, or for the felony offense of trafficking in narcotics, is irrelevant to the Court's decision because if he had authority to make a felony arrest, it doesn't matter what the actual offense stated was for which he arrested the Defendant. If he had authority to make the felony arrest and he had probable cause for such arrest, he had authority to search the Defendant incident to that felony arrest without regard to Rule 6[.]01, without regard to the Bernardo case. Without regard to anything else he can search him incident to a valid felony arrest.

■ The prosecution has not recast the issue presented to the district court. The state argued to the district court that even though Hawkins was arrested for a misdemeanor, there was probable cause to arrest him for a felony, and, therefore, the fact that he was arrested for a misdemeanor is irrelevant. The state makes the same argument on appeal; it does not suggest that the officers really intended to make a felony arrest.

We apply an objective standard for determining the lawfulness of an arrest

or a search by taking into account the totality of the circumstances to determine whether the police have probable cause to believe that a crime has been committed, and if the objective standard is met, we will not suppress evidence or invalidate an arrest "even if the officer making the arrest or conducting the search based his or her action on the wrong ground or had an improper motive." *State v. Olson*, 482 N.W.2d 212, 214 (Minn.1992). *See State v. Johnson*, 314 N.W.2d 229, 230 (Minn.1982) ("The fact that it later turns out that the officers were wrong does not mean that they did not have probable cause at the time they made their assessment.").

*State v. Perkins*, 582 N.W.2d 876, 878 (Minn.1998).

> To establish probable cause, the police must show that they "reasonably could have believed that a crime has been committed by the person to be arrested."

*State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997) (quoting *State v. Sorenson*, 270 Minn. 186, 196, 134 N.W.2d 115, 123 (1965)); *see also In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn.1997) ("test of probable cause to arrest is whether the objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed"). The lawfulness of the arrest is determined by an objective standard that takes into account the totality of the circumstances, including the expertise and experience of the arresting police officers. *Perkins*, 582 N.W.2d at 878; *Riley*, 568 N.W.2d at 523.

■ When probable cause exists, police may arrest a felony suspect without a warrant in any public place. *State v. Walker*, 584 N.W.2d 763, 766 (Minn.1998). If the arrest is valid, police may conduct a warrantless search of the suspect as an incident to the arrest without additional justification. *Id.*

■ In explaining its conclusion that there was not probable cause to arrest Hawkins, the district court stated that Hawkins's conduct "could have been perfectly benign." The court also stated that "making 'hand to hand exchanges,' without more, does not necessarily mean that [Hawkins] was engaging in illegal activities." This explanation demonstrates that the district court applied the wrong standard for determining whether there was probable cause to arrest Hawkins and by doing so, required a greater showing than was needed to establish probable cause. The fact that there might have been an innocent explanation for Hawkins's conduct does not demonstrate that the officers could not reasonably believe that Hawkins had committed a crime.

■ When determining whether there is probable cause, the

> ultimate inquiry is not whether there is some hypothesis of * * * "innocence" which is reasonably consistent with the circumstances shown, for such an analysis is more appropriate to the "beyond a reasonable doubt" standard used on the merits. Here, we are dealing with "probable cause," which requires "far less evidence."

*United States v. Sanchez*, 689 F.2d 508, 515–16 (5th Cir.1982). *See also, State v. Zachodni*, 466 N.W.2d 624, 630 (S.D.1991) (facts need not be "conclusive" nor exclude all "possible non-criminal causes" to constitute probable cause); *Peterkin v. United States*, 281 A.2d 567, 569 (D.C.App.1971) (mere possibility that "innocent explanations for the activity may be imagined" does not diminish "reasonable likelihood of illegality appearing, from the circumstances, to prudent men possessing the knowledge and experience of the officers").

■ The prosecution argues that probable cause existed to arrest Hawkins for felony sale or possession of drugs in violation of Minn.Stat. §§ 152.023, subd. 1(1) (sale of narcotics); 152.024, subd. 1(1) (sale of schedule I, II, or III controlled substance except marijuana); 152.025, subd.

1(1), (2) (sale of marijuana or schedule IV controlled substance); 152.025, subd. 2(1) (possession of a controlled substance).

Citing *State v. Evans,* 373 N.W.2d 836, 838 (Minn.App.1985), *review denied* (Minn. Nov. 1, 1985), Hawkins argues that the district court properly concluded that the officers lacked probable cause to arrest him. In *Evans,* officers patrolling a park known to be a site of drug-related activities saw the defendant and three other people passing a single marijuana cigarette. *Id.* This court concluded that the circumstances did not give rise to a reasonable belief that any of the persons possessed more marijuana than was required for a petty misdemeanor violation and, therefore, the officers lacked probable cause to arrest the defendant for possession of marijuana with intent to distribute. *Id.*

The facts supporting probable cause in this case are stronger than those in *Evans.* The officers watched Hawkins for about 15 minutes riding a bicycle around an intersection. Hawkins whistled and waved at approaching vehicles, which Willis testified is a common way for street-level narcotics dealers to get people's attention and let them know that they are selling narcotics. Hawkins also conducted two hand-to-hand transactions with other individuals in a manner that Willis concluded was consistent with a drug transaction and not with innocent behavior. These facts, considered together, are sufficient to permit a prudent person to reasonably believe that Hawkins had engaged in the sale of drugs. *See State v. Martinson,* 581 N.W.2d 846, 852 (Minn.1998) (although each factor was consistent with innocent behavior, factors taken together justified reasonable suspicion of criminal activity); *State v. Anderson,* 439 N.W.2d 422, 426 (Minn.App. 1989), *review denied* (Minn. June 21, 1989) (observation of apparently innocent acts can be significant to a trained officer and the officer is entitled to assess probable cause in light of his experience). Therefore, there was probable cause to arrest Hawkins for a felony offense.

■ Because we conclude that there was probable cause to arrest Hawkins for a felony offense, we also conclude that the search that led to the discovery of the crack cocaine was a valid search incident to the arrest. It is not necessary to address the state's alternative argument that probable cause existed to arrest Hawkins for a misdemeanor.

### DECISION

Because the evidence was sufficient to establish probable cause that Hawkins had engaged in the sale of drugs, Hawkins's arrest was a valid felony arrest and the search that led to the discovery of the crack cocaine was a valid search incident to the arrest. The district court clearly erred when it determined that there was not probable cause to arrest Hawkins.

**Reversed.**